Megan Mackie (SBN 325004)
**MACKIE LAW, APC**
20 Pacifica
Suite 850
Irvine, CA 92618
Tel: (949) 702-8685
Email: megan@mackieemploymentlaw.com

Attorneys for Defendant WAL-MART
ASSOCIATES, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDY REYES, an individual, | Case No. 5:26-cv-0974 |
| Plaintiff, | [Removed from San Bernardino County Superior Court Case No. CIVVS2600139] |
| v. | |
| WAL-MART ASSOCIATES, INC., a Delaware Corporation; JESSE ESPINOZA, an individual; and DOES 1 through 20, | **DEFENDANT WAL-MART ASSOCIATES, INC.'S PETITION FOR REMOVAL** |
| Defendants. | Action Filed:     January 8, 2026<br>Trial Date:       None Set |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant WAL-MART ASSOCIATES, INC. hereby removes this action from the Superior Court of the State of California for the County of San Bernardino to the United States District Court for the Central District of California, on the following grounds:

///

-1-
**DEFENDANT WALMART INC.'S PETITION FOR REMOVAL**

## I.    INTRODUCTION

1.    This Court has jurisdiction over this action because complete diversity exists between Plaintiff SANDY REYES ("Plaintiff") and Defendant WAL-MART ASSOCIATES, INC. ("Walmart" or "Defendant").

2.    Plaintiff is a citizen of the State of California, and was a California citizen at the time of the filing of the Complaint.

3.    Walmart is now, and was at the time this action was filed, a citizen of the State of Arkansas and a citizen of the State of Delaware within the meaning of 28 U.S.C. section 1332. At all material times, Walmart was a corporation organized under the laws of the State of Delaware, and at all material times Walmart has maintained its principal place of business, including its corporate headquarters, in the State of Arkansas.

4.    Plaintiff's Complaint, on its face, contemplates an amount in controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

5.    Pursuant to 28 U.S.C. section 1446(b)(1), this case is being removed within thirty (30) days of service of the Complaint upon Walmart.

## II.    THE STATE COURT ACTION

6.    On January 8, 2026, Plaintiff filed an action against Walmart titled "SANDY REYES v. WAL-MART ASSOCIATES, INC., a Delaware Corporation; JESSE ESPINOZA, an individual; and DOES 1 through 20," (the "State Court Action"). Walmart was served with copies of the Summons, Complaint, NOTICE OF TRIAL SETTING CONFERENCE and NOTICE OF CASE ASSIGNMENT, Civil Case Cover Sheet, and Certificate of Assignment on January 30, 2026. Attached hereto as **Exhibit A** are true and correct copies of the Summons, Complaint, NOTICE OF TRIAL SETTING CONFERENCE and NOTICE OF CASE ASSIGNMENT, Civil Case Cover Sheet, and Certificate of Assignment.

7.    On February 27, 2026, Walmart filed an Answer to the Complaint. A true and correct copy of Walmart's Answer is attached hereto as **Exhibit B**.

8.    The Summons, Complaint, Proof of Service, NOTICE OF TRIAL SETTING CONFERENCE and NOTICE OF CASE ASSIGNMENT, Civil Case Cover Sheet, Certificate of Assignment, and Answer constitute the pleadings, process, and orders served upon or by Walmart in the State Court Action.

## III.    COMPLETE DIVERSITY EXISTS BETWEEN PLAINTIFF AND WALMART

9.    The Complaint, and each alleged cause of action asserted therein, may be properly removed on the basis of diversity jurisdiction, in that this is a civil action between citizens of different states. Plaintiff's claims against Walmart contemplate an amount in controversy that exceeds the sum of $75,000, exclusive of interest and costs. (28 U.S.C. § 1332.)

10.    Plaintiff is now, and was at the time this action was filed, a citizen of the State of California within the meaning of U.S.C. § 1332(a) -- her place of residence is in the State of California. (*See* Ex. A, Complaint, ¶ 3.)

11.    If a party is a corporation, it is a citizen of both its state of incorporation and the state where it has its principal place of business. (28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).)

12.    Walmart is now, and was at all material times, a corporation organized under the laws of the State of Delaware. (Declaration of Megan A. Mackie ("Mackie Dec.") ¶ 2, Ex. A.) Walmart is therefore a citizen of the State of Delaware.

13.    Walmart is now, and was at all material times, headquartered in Bentonville, Arkansas. (*Id*.) Walmart's officers and directors are employees whose offices are located at its headquarters in Bentonville, Arkansas. Walmart's high-level officers direct, control, and coordinate the corporation's activities from Walmart's headquarters in Bentonville, Arkansas. And Walmart performs the vast

majority of its executive and administrative functions at its headquarters in Bentonville, Arkansas. Walmart is therefore a citizen of the State of Arkansas, because its principal place of business is in Bentonville, Arkansas. (28 U.S.C. §1332(c); *Hertz Corp.*, 130 S. Ct. at 1192 ("[W]e conclude that the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").)

14.    Therefore, for the purpose of determining jurisdiction, Walmart was not (and is not) a citizen of the State of California, but rather, it was (and is) a citizen of the States of Delaware and Arkansas.

15.    "Doe" Defendants fictitiously named, but not served, are not joined in this Petition and Notice of Removal and shall be disregarded for the purpose of determining removal jurisdiction. (28 U.S.C. § 1441(b)(1). In determining whether diversity of citizenship exists, only the named defendants are considered. (*Newcombe v. Adolf Coors Co.* 157 F. 3d 686, 690-691 (9th Cir. 1998).)

16.    Accordingly, complete diversity exists between Plaintiff and Walmart.

17.    In her Complaint, Plaintiff alleges sixteen causes of action: 1. Disability Discrimination in Violation of FEHA (Gov. Code § 12940(a)); 2. Failure to Engage in Interactive Process (Gov. Code § 12940(n)); 3. Failure to Provide Reasonable Accommodation (Gov. Code § 12940(m)); 4. Hostile Work Environment – Harassment Based on Disability in Violation of FEHA (Gov. Code § 12940(j)(1)); 5. Hostile Work Environment – Sexual Harassment in Violation of FEHA (Gov. Code § 12940(j)(1)); 6. Retaliation in Violation of FEHA (Gov. Code § 12940(h)); 7. Whistleblower Retaliation in Violation of California Labor Code (Labor Code § 1102.5)); 8. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA (Gov. Code § 12940(k)); 9. Negligent Hiring, Retention, and Supervision (California Civil Code § 1714)); 10. Wrongful Termination in Violation of FEHA (Gov. Code § 12940(a)); 11. Failure to Provide Meal Breaks in Violation of Labor Code (Labor Code § 512)); 12. Failure to

Provide Rest Breaks in Violation of Labor Code (Labor Code § 226.7)); 13. Failure to Pay Minimum Wage in Violation of California Labor Code (Labor Code §§ 1182.12, 1194, and 1194.2)); 14. Waiting Time Penalties Pursuant to Labor Code (Labor Code §§ 201-203)); 15. Unfair Business Practices in Violation of Business and Professions Code (California Business & Professions Code § 17200)); and 16. Intentional Infliction of Emotional Distress.

## IV. <u>NAMING ESPINOZA AS A DEFENDANT DOES NOT DESTROY DIVERSITY BECAUSE IT IS OBVIOUS THAT HE WAS JOINED FOR THE PURPOSE OF AVOIDING FEDERAL JURISDICTION</u>

18.    Plaintiff's Complaint also names Jesse Espinoza ("Espinoza") as an individual defendant. Plaintiff alleges, upon information and belief, that Espinoza "is an individual, resident of the State of California, and at all relevant times mentioned herein was WALMART's managing agent, PLAINTIFF's direct supervisor." (*See* Ex. A, Complaint, ¶ 5.)

19.    However, Espinoza's citizenship can be disregarded because he is a sham defendant, fraudulently joined for the purpose of avoiding federal jurisdiction. Indeed, a defendant's right of removal cannot be defeated by the fraudulent joinder of a non-diverse defendant. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) ("[i]t is commonplace that fraudulently joined defendants will not defeat removal on diversity grounds").

20.    In the Ninth Circuit, a non-diverse defendant is deemed a sham, and will not defeat jurisdiction, "if a plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the well-settled rules of the state." *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also Charlin v. Allstate Ins. Co.*, 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998) citing *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), aff'd, 710

F.2d 549 (9th Cir. 1983) ("A joinder is fraudulent if there is no intention to get a joint judgment, and there is no colorable ground for so claiming.").

## V.   AS A MATTER OF LAW, PLAINTIFF CANNOT POSSIBLY RECOVER AGAINST ESPINOZA FOR THE CLAIMS ASSERTED AGAINST HIM AND HE HAS NO INTENTION OF DOING SO

21.   The Complaint purports to five causes of action against "All Defendants", suggesting Plaintiff is asserting these five causes of action against Espinoza: Disability Harassment (Cause of Action Four), Failure to Provide Rest Breaks in Violation of California Labor Code § 226.7 (Cause of Action Twelve), Failure to Pay Minimum Wage in Violation of California Labor Code §§ 1182.12, 1194, and 1194.2 (Cause of Action Thirteen), Waiting Time Penalties Pursuant to Labor Code §§ 201-203 (Cause of Action Fourteen), and Intentional Infliction of Emotional Distress (Cause of Action Sixteen). (*See* Ex. A, Complaint, pgs. 13:10, 25:15, 26:13, 28:3, 30:3.)

22.   However, Plaintiff cannot show liability against Espinoza for any of these claims as discussed below.

   a.   **Plaintiff Cannot as a Matter of Law Prove Disability Harassment Against Defendant Espinoza**

23.   Plaintiff makes the following allegations against Espinoza:

   a.   "PLAINTIFF was eventually called into a meeting with several WALMART managing agents, including Andy and DEFENDANT ESPINOZA wherein these managing agents questioned PLAINTIFF regarding the threat. As a result of the questioning, WALMART confusingly decided to transfer PLAINTIFF back to its OPD department until it completed its investigation." (Ex. A, Complaint, ¶ 19.)

   b.   "As a result of the foregoing and the stress WALMART imposed and escalated, PLAINTIFF ended up in the hospital due to heart problems.

PLAINTIFF disclosed her hospitalization to WALMART's managing agent, Jesse. Despite making this disclosure, WALMART again failed to abide by its legal obligation to engage in the interactive process with PLAINTIFF to determine whether she needed reasonable accommodation to perform the essential functions of her position." (*Id*., ¶ 21.)

24.    Neither of these allegations support a cause of action for harassment on the basis of disability.

25.    Unlike other forms of discrimination, harassment claims concern actions "outside the scope of job duties which are not of a type necessary to business and personnel management." *Reno v. Baird*, 18 Cal.4th 640, 647 (1998). Specifically, actionable harassment "…consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives....No supervisory employee needs to use slurs or derogatory drawings, to physically interfere with freedom of movement, to engage in unwanted sexual advances, etc. in order to carry out the legitimate objectives of personnel management." *Id*. at 645-646.

26.    Here, the first allegation against Espinoza describes an ordinary personnel management action of investigating a complaint involving Plaintiff, which does not constitute actionable harassment under FEHA. *See Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 64–65 (1996).

27.    As to the second allegation, these alleged facts relate to claims for failure to accommodate or failure to engage in the interactive process, and Plaintiff cannot rely on a separate and distinguishable claim under FEHA to prop up her harassment claim.

28.    An alleged failure to accommodate Plaintiff is a separate actionable claim under FEHA, which Plaintiff has already asserted in her Complaint, and does

-7-
DEFENDANT'S REMOVAL PETITION

not constitute a separate basis for harassment. *See Gardner v. City of Berkeley*, 838 F.Supp.2d 910, 926 (N.D. Cal. 2012). Indeed, well-established case law has concluded that a defendant's refusal to engage in accommodation requests is not harassment. "Plaintiff alleged two harassing acts within the statute of limitations: (1) Defendant forcing Plaintiff to apply rather than recognizing his request for reinstatement, and (2) Defendant's refusal to engage in any kind of dialogue about Plaintiff's request for accommodation. [citation omitted]. Neither act is harassment..." (*Gardner*, 838 F.Supp.2d 910, 926, [emphasis added]; citing Reno, 18 Cal.4th at 646–647.)

29.   Accordingly, this claim against Espinoza fails as a matter of law, and he should be considered a sham defendant.

   b.   **Plaintiff Cannot Show that Espinoza is Liable for Wage and Hour Violations (Causes of Action Twelve to Fourteen)**

30.   For Plaintiff to hold Espinoza individually liable on her Wage and Hour Claims, Plaintiff must show that Espinoza is an officer, director, or managing agent of Walmart. *See* Labor Code § 558.1:

> (a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.
> (b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.

31.   Here, Plaintiff does not allege that Espinoza is an officer or director of Walmart; she only alleges that he was a managing agent. (*See* Ex. A, Complaint, ¶ 5.) Therefore, the only way Plaintiff can attach liability to him is to show that he is a managing agent of Walmart.

32. Because managing agent as defined within Labor Code § 558.1 has the same meaning as provided in the statute providing for punitive damages (Section 3294 of the California Civil Code), Plaintiff therefore must prove that Espinoza is a "corporate employee[] who exercise[s] substantial independent authority and judgment in [his] corporate decisionmaking so that [his] decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566–67, 981 P.2d 944, 947 (1999); *see also Roby v. McKesson Corp.* 47 Cal. 4th 686, 714-715 (as modified) (2009) (clarifying that "when [the Court] spoke in White about persons having discretionary authority over corporate policy, [the Court was] referring to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership...") <u>Importantly, a "managing agent" under Section 3294(b) must "be more than a mere supervisory employee."</u> *Id*. at 573. Indeed, mere ability to hire and fire employees does not render a supervisory employee a managing agent under section 3294, subdivision (b). *Id*. At 566.

33. Here, Plaintiff only claims that Espinoza is a supervisory employee of a single store of Walmart in that he had supervisory authority as to Plaintiff:

    a. "PLAINTIFF is informed and believes, and thereon alleges, that Defendant JESSE ESPINOZA ("ESPINOZA") is an individual, resident of the State of California, and at all relevant times mentioned herein was WALMART's managing agent, PLAINTIFF's direct supervisor and operated within that capacity at all relevant times herein" (*See* Ex. A, Complaint, ¶ 5.)

    b. "PLAINTIFF asserts herein on information and belief that ESPINOZA, by way of his role within WALMART's corporate hierarchy, had the ability to exercise day to day control over hiring, firing, schedules, working conditions, pay rates, pay methods, processes and procedures governing the maintenance of PLAINTIFF' s

payroll records, and directly implemented and/or acquiesced to the practices that resulted in PLAINTIFF suffering from the aforementioned legal violations." (*Id*., ¶ 149.)

34.    In other words, Espinoza is an employee with authority limited to one store of Walmart. Espinoza is not even the Store Manager of a single store, which is the highest-level store employee. He is only an Operations Manager. (*Id*., ¶ 148.) However, managerial responsibility for a single store of a large retailer, by itself, does not suffice. *Burtch v. Wal-Mart Assocs., Inc*., No. CV 22-6513-GW-RAOX, 2024 WL 994568, at *21 (C.D. Cal. Feb. 6, 2024), adopted, No. CV 22-6513-GW-RAOX, 2024 WL 993900 (C.D. Cal. Feb. 8, 2024); *see also Cruz v. HomeBase,* 83 Cal.App.4th 160, 168 (2000) (concluding that individual who "was not a manager of numerous stores, but only a supervisor subordinate to the store manager in a single outlet of a multi-store chain" was insufficient, as a matter of law, to demonstrate "managing agent" status).

35.    Indeed, multiple courts have found that store level decision makers are not managing agents of Walmart. *See Glover v. Wal-Mart Assocs., Inc.* (C.D. Cal. Mar. 7, 2024) 2024 WL 1677519, at *4 (summary adjudication as to punitives granted because "none of the [Walmart] store-level decisionmakers involved in Glover's termination are officers, directors, or managing agents whose acts may be attributed to Walmart for purposes of punitive damages"); *Krauser v. Wal-Mart Assocs., Inc.* (C.D. Cal. July 20, 2023) 2023 WL 5504981, at *11 ("Walmart's executive committees have authority over its corporate policy, and none of the employees involved in this case were on any of those committees."); *Burtch v. Wal-Mart Assocs., Inc.* (C.D. Cal. Feb. 6, 2024) 2024 WL 994568, at *21 (Store Manager not managing agent); *Fuller v. Wal-Mart Stores, Inc.* (E.D. Cal. July 18, 2006) 2006 WL 2034665, at *9 (same); *Garcia v. Wal-Mart Assocs., Inc.* (C.D. Cal. Dec. 21, 2020) No. CV 1907784 CJC SKX, 2020 WL 8455110, at *1 (Store

Manager not managing agent); *Raygoza v. Walmart Inc.* (C.D. Cal. Dec. 21, 2020) No. CV 21-809-GW-KSx (Assistant Manager not managing agent).

36.     Because Plaintiff will be unable to show that Espinoza is a managing agent, he cannot be liable on the three wage and hour claims, and he is therefore a sham defendant.

c.     **Plaintiff Cannot Show that Espinoza is Liable for Intentional Infliction of Emotional Distress**

37.     A claim for IIED requires a showing of "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009).

38.     Proving "extreme and outrageous" conduct is a high bar. Conduct is extreme and outrageous when it exceeds all bounds of decency usually tolerated by a decent society, and is of a nature especially calculated to cause, and does cause, mental distress. *Id*. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Yurick v. Superior Court* 209 Cal.App.3d 1116, 1128 (1989).

39.     Further, IIED does not extend to management and/or personnel decisions made in the course and scope of employment. *See Janken v. GM Hughes Electronics,* 46 Cal.App.4th 55, 80 (1996).

40.     Here, the conduct alleged against Espinoza clearly does not meet this high bar to attach liability to him. As described above in paragraph 23, Plaintiff only makes two allegations against Espinoza that could form the basis of this claim. The first allegation relates to an investigation against an alleged threat of workplace violation against Plaintiff (Ex. A, Complaint, ¶ 19), and the second relates to

Plaintiff notifying him of a hospitalization, and Walmart not engaging with her in the interactive process. (*Id.*, ¶ 21.)

41.    In other words, Plaintiff's only allegations against Espinoza are that he investigated a threat against her, which again is a standard personnel management action, and that she notified him of a medical issue and Walmart did not engage in the interactive process with her on the basis of that notification. Neither constitutes extreme and outrageous conduct.

42.    Because Plaintiff only pleads a standard personnel management action and facts that support FEHA claims for failure to accommodate or failure to engage in the interactive process, neither of which constitutes extreme and outrageous conduct, the IIED claim against him fails as a matter of law, and he should be considered a sham defendant.

## VI.    THE AMOUNT IN CONTROVERSY EXCEEDS THE $75,000 JURISDICTIONAL MINIMUM

18.    The jurisdictional minimum amount that must be in controversy was satisfied at the time of the filing of this action, and is still satisfied by the facts set forth herein and described more specifically below. (28 U.S.C. § 1332(a) ("[D]istrict courts …  have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between … citizens of different States."); *see also Matheson v. Progressive Specialty Ins., Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000").)

19.    Walmart discusses below the allegations in the Complaint solely to demonstrate that the amount in controversy exceeds $75,000. Walmart denies that Plaintiff is entitled to any damages, and that Plaintiff will be able to recover on any of her theories of recovery.

20.    In assessing the amount in controversy, this Court may, for removal purposes, look to the removal papers and the pleadings, as well as summary judgement type evidence. (*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).)

21.    In measuring the amount in controversy for purposes of diversity jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." (*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quotations omitted, emphasis added). In addition, the Court should aggregate damages in determining whether the controversy exceeds $75,000. *See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972) ("aggregation is permitted when a single plaintiff seeks to aggregate two or more of her own claims against a single defendant") (internal quotations omitted).)

22.    Additionally, as the Ninth Circuit explained in *Chavez*, "the amount in controversy is not limited to damages incurred prior to removal--for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)[; but] rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." (*Chavez*, 888 F.3d at 414-15.)

23.    Here, Plaintiff seeks to recover (1) "general damages according to proof, on each cause of action for which such damages are available in an amount that exceeds $1,000,000;" (2) "economic and emotional distress damages including loss of earnings, bonuses, commissions, deferred compensation, and other employment benefits, lost future earnings, a blot on PLAINTIFF's employment

-13-
DEFENDANT'S REMOVAL PETITION

history, lack of references, and other consequential damages in an amount that exceeds $1,000, 000;" (3) "special damages"; (4) "reasonable attorney's fees,"; (5) "punitive  and exemplary damages;" (6) "prejudgment and post-judgment interest"; (7) "statutory penalties"; (8) "costs of suit"; (9) "penalties under the California Government Code for any such violations"; and (10) "total damages in the amount of $5,000,000.00". (Ex. A, Complaint, Prayer for Relief).

**A.    Economic and Emotional Distress Damages**

24.    Plaintiff is seeking damages for "economic and emotional distress damages including loss of earnings, bonuses. commissions, deferred compensation, and other employment benefits, lost future earnings, a blot on PLAINTIFF' s employment history, lack of references, and other consequential damages in an amount that exceeds $1,000,000." (*See* Ex. A, Complaint, Prayer for Relief, ¶ 2.)

25.    Therefore, the face of Plaintiff's Complaint expressly contemplates at least $1,000,000 in recovery for economic and emotional distress damages, which exceeds the amount in controversy requirement.

**B.    Punitive Damages**

33.    Plaintiff also seeks punitive damages in an amount in excess of $3,000,000. (*See* Complaint, Prayer for Relief ¶ 5.)

34.    Therefore, the face of Plaintiff's Complaint expressly contemplates at least $3,000,000 in punitive damages, which exceeds the amount in controversy requirement alone.

**C.    Total Recovery Requested**

33.    In total, Plaintiff requests $5,000,000 in total damages. (*See* Complaint, Prayer for Relief ¶ 10.)

34.    Therefore, the face of Plaintiff's Complaint expressly contemplates at least $5,000,000 in total damages, which exceeds the amount in controversy requirement.

-14-

## V. **REMOVAL IS TIMELY**

36. This Petition and Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because this action is being removed within thirty (30) days of service of the Summons and Complaint upon Walmart in which diversity of citizenship is apparent. (28 U.S.C. § 1446(b)(3).)

## VI. **CONCLUSION**

37. For the reasons stated above, this Court has jurisdiction under 28 U.S.C. §§ 1332 and 1441 because this is a civil action between citizens of different states, and the matters placed in controversy by Plaintiff exceed $75,000, exclusive of interest and costs.

38. Accordingly, Walmart may remove the action to this Court pursuant to 28 U.S.C. §§ 1441. Thus, Walmart respectfully requests that this Court exercise its removal jurisdiction over this entire action under 28 U.S.C. §§ 1332, 1441, and 1446.

DATED:  March 2, 2026          MACKIE LAW, APC


By:  _____/s/ *Megan A. Mackie*_____
                MEGAN A. MACKIE

            Attorneys for Defendant WAL-MART
            ASSOCIATES, INC.

-15-
DEFENDANT'S REMOVAL PETITION